(No. 77-CC-1280—

WARCHOL CONSTRUCTION CO., INC., Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 2, 1979.*

LOUIS C. WARCHOL and NICHOLAS S. AZGONE, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; FRANCIS DONAVAN, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This claim arises as a result of a contract entered into on or about May 17, 1973, between Claimant and the Capital Development Board of the State of Illinois for the general construction work of the Davea Center in DuPage County, Illinois.

The work of the general contractor was to include excavating, backfilling, grading, sitework and applying base and bituminous (asphalt) paving of the Ringroad around said building and service area and parking lots on the north, south and west sides of the building.

The construction work began in June, 1973. It appears that in late September or early October 1973, the architect's representative issued a verbal stop-order concerning the on-going grading and paving on the south side of the building until such time as the architect could issue a bulletin which would price out the value of certain planned change-orders and modifications which would alter the elevations of the existing grades, increase the water retention pond and the installation of four new catch basins and storm sewers all located on the south side of the building.

It further appears that the architect did follow-up his stop-order with Bulletin No. 4 on October 8, 1973, and further issued revised drawings changing the elevations in these areas. It appears the following changes were requested:

(a) Re-location and enlargement of retention pond.
(b) Add four catch basins (two in the middle of south ringroad) and add new storm lines.
(c) Raise the grade of the south parking lot 18 inches in the center.
(d) Raise the grade of the south ringroad approximately 4 inches.
(e) Raise the grade approximately 4 inches at parts of the service area.

Pursuant to said stop-order, no work was done by the Claimant-contractor concerning the grade elevations or the paving operation in the south parking lot, south service areas or the south portion of the ringroad with the exception of the base course being put in the south portion of the ringroad, so that there would be access to the building site.

During the same period of time, to-wit: in October 1973, the Claimant-contractor was able to and did complete the grading, leveling and applying of bitunimous (asphalt) paving in the north parking lot and other portions of the ringroad.

During this period of time, the cost of construction, and in particular the cost of asphalt, was escalating daily, sometimes rising two or three times a day. During the winter months when it was impossible to do any grading and asphalt paving, no work was done.

Before Bulletin No. 4 could result in a change-order being issued, the architect's representative on April 5, 1974, issued another bulletin, Bulletin No. 8. This was six months after the grading and paving had been stopped and this bulletin again changed the grades and elevations on the south side of the building.

As a result, Bulletin No. 8 resulted in a change-order request No. 43 which contained the final grades and elevations and paving to be installed on the project.

The Capital Development Board did not approve and forward the signed change-order request No. 43 to Claimant until January 3, 1975.

The evidence is that the work on the revised elevations, grading and paving was done by Claimant in the Spring and Summer of 1975 at an additional cost of $73,510.90, which cost was due largely to increased costs for asphalt, grading and paving.

The evidence shows that the stop-order actually affected part of the south ringroad and south area and 90 percent of the south parking lot.

The record discloses that Claimant had a sub-contract with the John Ward Paving Company for the

grading and bituminous paving at the site in the amount of $125,321.00. Ward commenced work on said project and did complete grading and paving of part of its contract for which it was paid $47,000.00, leaving a balance of $78,321.00 unfinished on its contract. Ward refused to perform under the contract because of increased cost of asphalt. Thereupon, the balance of Ward's contract was awarded to Rock Road Construction Company who was paid $151,831.90 to complete said contract. This amount is $73,510.90 in excess of the amount remaining in Ward's contract.

Testimony was given by one Ray Jensen of Claimant's construction company to the effect that 75.33 percent of the total uncompleted job was affected by the stop-order, and Claimant's evidence indicates that the sum of $55,375.76 is the amount of damages it sustained by the unreasonable delay caused by the architect's stop-order.

Claimant also requests the sum of $17,720.24 as interest due it for non-payment of the principal amount.

The evidence is uncontradicted that the delays were caused as a result of the various changes in plans of the State and that unfortunately these changes in plans occurred so that when the contractor could resume work, the weather conditions during the winter months were such that they could not be completed. It is also uncontradicted that the costs of construction particularly that of asphalt, were rising almost daily as a result of the Arab oil embargo.

Ordinarily a contractor is bound by the terms of his contract and must perform under the terms of said contract unless the other party to the contract, in this case, the State, by its own actions causes the additional

costs. The record is undisputed in the present case that the delays were caused by changed orders of the State from which the contractor could not protect itself and, as a result of said changed orders, Claimant did sustain considerable loss.

This Court, in the case of *Blades, Inc. v. State of Illinois, 30 Ill. Ct. Cl. 388,* laid down the rule that "contractor is entitled to damages caused by mistake in bid plans prepared by the State."

The Court believes the present case falls within the scope of the above-cited decision.

The Court also believes the unreasonable delay caused by Respondent when it issued its stop-order, coupled with the cold weather and the Arab oil embargo, resulted in a substantial escalation of the cost of asphalt and other construction costs.

It is the opinion of this Court that Claimant is entitled to the sum of $45,000.00 in payment of additional costs and an award is hereby entered in that amount.